[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this marital dissolution action, the parties have disagreements concerning custody of their children, support and alimony, and the distribution of assets. Based on the trial evidence, the court makes the following findings and orders.
The parties were married on January 2, 1988 in Waterbury. They have two children; Theodore William Wright, who was born on April 15, 1988, and Jean Dorothy Wright, who was born on November 8, 1989. No other children have been born to the wife since the date of the marriage. The court has jurisdiction over the parties and the marriage.
The plaintiff, who is forty-seven years old, is a high school and college graduate currently employed by the Computer Science Corporation, Inc., as a systems analyst earning approximately seventy-three thousand ($73,000) dollars a year.
The defendant is thirty-four years old, a high school graduate currently working for Plasma Tech as a maintenance person. From this employment, he earns approximately eighteen thousand ($18,000) dollars a year. Following high school, and during the course of the marriage, the husband undertook a variety of classes and training sessions including courses CT Page 13948 relating to electronics for computer repairs, occupational therapy, and massage therapy. While the defendant's principal employment is with Plasma Tech, he is a licensed massage therapist and works in this field part time while attempting to build up a practice. His affidavit reflects gross earnings of twenty-five ($25) dollars a week from this activity.
The parties separated in December 1997 when the defendant, at the plaintiffs request, moved from the family residence at 34 Grande Road, East Hartford. The children reside primarily with their mother at this residence and are cared for by their father on alternate weekends and during some weekday evenings. While the defendant seeks to continue the present schedule, the plaintiff wishes to reduce it somewhat, complaining that it is too much movement back and forth for the children. In addition, the plaintiff testified that the defendant takes the children to Bible studies one evening a week, and to a church on Sundays where religious tenets contrary to hers are espoused. She believes that her husband's instructions to the children that she will not go to heaven because she has not accepted God as her savior is harmful and confusing to them. While the husband acknowledged that he has told the children their mother will not attain salvation because she has not accepted God's grace, he denies that he is a religious person, claiming instead that he has found true meaning in the Bible. Though the court makes no judgment concerning the righteousness of the husband's religious credo or the absence of religious fervor on the wife's part, it is confusing and detrimental for the children to hear from one parent that the other will suffer eternal exclusion on the basis of factors they are ill prepared by age or maturity to understand, let alone embrace or reject.
The parties differ on more than religion. They have conflicting views regarding the disciplinary needs of the children, their education, and medical care. While the husband was frequently at home during days caring for the children in their early years, the wife has always maintained the primary responsibility for their education and health care. Both children have learning disabilities for which they have specialized educational programs. The plaintiff, alone, has conferred with school officials and sought educational environments suitable for the children's needs. As an example of the husband's lack of involvement in these areas, he was not able to state the name of the children's pediatrician or either of their school teachers during trial testimony. Regarding discipline, the wife expressed CT Page 13949 a belief that the children should be taught to resolve conflict with reasoning, and she testified credibly that the husband's first response to conflict is generally to discipline the children without discussion.
Under these circumstances, an order of joint custody is not in the children's best interests.
The defendant's affidavit shows that he owns no assets in his own name. The plaintiff, on the other hand, owns the former family residence which she values at one hundred and twenty thousand ($120,000) dollars, with a first mortgage of eighty-five thousand ($85,000) dollars and a second mortgage with a present balance of approximately twenty-eight thousand ($28,000) dollars. Thus, the home has gross equity of approximately six thousand, three hundred ($6,300) dollars. In addition to the home, the wife has liquidities and retirement assets with a combined value of approximately one hundred and twenty thousand ($120,000) dollars. She also has debt in the aggregate amount of fifty-six thousand, four hundred and eighty-one ($56,481) dollars.
The wife proposes to retain the assets in her name, assume all the debt, and pay the sum of ten thousand ($10,000) dollars to the husband as a property distribution. The husband seeks a payment of twenty six thousand, three hundred ($26,300) dollars from the wife, leaving her with the balance of the assets and the debt. Additionally, the husband seeks alimony in the amount of two hundred and fifty ($250) dollars a week for a period of five years. The wife wishes to pay no alimony and seeks no child support from the husband.[1]
At the time of the parties' marriage, the wife was thirty-six years old and the husband was twenty-four. She had purchased a home on Greenlawn Street in 1985 for approximately sixty-two thousand ($62,000) dollars, financing fifty-five thousand ($55,000) dollars and paying cash for the balance, including closing costs, of approximately nine thousand, five hundred ($9,500) dollars. On November 6, 1987, a few months before the marriage, the plaintiff purchased the residence on 34 Grande Road for one hundred fifty-three thousand ($153,000) dollars. While she initially obtained a bridge loan because she had not yet sold her first house, within weeks of her purchase of the Grande Road property, she closed on the sale of the Greenlawn house with the result that she had a first mortgage of approximately one hundred thousand ($100,000) dollars and equity of approximately CT Page 13950 fifty-three thousand ($53,000) dollars. The plaintiff testified without dispute from the defendant that the present fair market value of this home is approximately thirty-three thousand ($33,000) dollars less than its original purchase price.
The second mortgage on the property with a balance of approximately twenty-eight thousand ($28,000) dollars resulted largely from borrowing by the plaintiff to pay for the defendant's various schoolings undertaken during the course of the marriage and to meet family expenses. The plaintiff pays approximately four hundred ($400) dollars a month, interest alone, on this debt.
When the parties were married, they were essentially debt free with the exception of the mortgage on the plaintiff's residence. The debt of approximately fifty six thousand, four hundred and eighty ($56,480) dollars shown on the plaintiffs financial affidavit was subsequently incurred by the parties and is being paid exclusively by the plaintiff. Since the parties' separation in 1997, the defendant, with the plaintiff's permission, has continued to utilize credit cards in both parties' names, contributing to the balance of this debt.
All of the liquidities shown on the plaintiff's financial affidavit were acquired by her during the marriage as a result of her employment and rising market conditions.
The defendant seeks alimony. Alimony is payment due from one spouse to the other to meet the payer's continuing duty of support. In light of the trial evidence and the statutory criteria set forth in C.G.S. 46b-82, the court finds that the plaintiff has some duty to provide assistance to the defendant for a brief period of time during which he will have the opportunity to develop his massage therapy practice into a more viable business. In determining its alimony award, the court has also taken its property disposition orders into consideration.
Both parties seek a dissolution of the marriage. From the evidence, the court agrees that the marriage has broken down irretrievably and should be dissolved. While neither party is guilty of significant fault, it is clear that during the marriage years the parties grew apart to the extent that they no longer have common interests or shared views on matters of fundamental importance to them. CT Page 13951
Accordingly, a decree may enter dissolving the marriage on the basis of its irretrievable breakdown.
Custody of the minor children is awarded to the plaintiff. The defendant shall be responsible for the physical care of the children on alternate weekends from 5 p. m. on Friday until 8 p. m. on Sunday. In addition, the defendant shall have physical care of the children on Tuesday evenings from 5 p. m. until 8 p. m., during which time he shall ensure that the children have their dinner and prepare for the next day's class.
The parties shall share the major holidays of Thanksgiving and Christmas. The defendant shall have the children for Thanksgiving from noon until 8 p. m. in even numbered years and on Christmas day from noon until 8 p. m. on odd numbered years. In the year in which the defendant does not have access to the children on Christmas day, he shall be entitled to be with them from 4 p. m. until 9 p. m. on Christmas eve.
In the event the defendant's weekend with the children coincides with a school holiday on either Friday or Monday, the defendant shall pick up the children on Thursday evening if the holiday is Friday and return them on Monday evening if the holiday is on Monday.
The defendant shall be entitled to two non-consecutive periods of ten days each with the children during the summer. So that the plaintiff may plan for balance of the children's summer holiday, the defendant shall notify the plaintiff, in writing, by May 1st of each year of the specific dates he intends to be with the children during the summer.
In the event either parent decides to move to a location greater than fifty miles from his or her present home, that party shall give the other written notice of such intent ninety days prior to any such move.
Application of the child support guidelines would result in imposition of an order that the defendant pay the plaintiff, as child support, the weekly sum of eighty-eight ($88) dollars. The court finds no basis in law or fact for a deviation from the guidelines. Accordingly, the defendant is ordered to pay to the plaintiff, as child support, the weekly sum of eighty-eight ($88) dollars. The obligation is ordered secured by immediate wage withholding. CT Page 13952
The plaintiff shall maintain the children on her employment-related health care insurance and she shall be solely responsible for the children's unreimbursed or under-covered health care expenses. She shall immediately notify the defendant of any emergency medical care incurred by either child, and she shall inform the defendant of any non-routine health care to be incurred by either child.
The plaintiff shall be entitled to claim both children as dependency exemptions for income tax purposes.
The plaintiff is ordered to pay to the defendant, as periodic alimony, the weekly sum of two hundred ($200) dollars for a period of one hundred and fifty-six (156) weeks, to terminate earlier on the remarriage of the defendant or death of either party and subject to modification in amount as provided by law. The outside term of alimony, however, shall not be subject to modification by extension.
The plaintiff shall be solely responsible for payment of the liabilities shown on her affidavit and shall hold the defendant harmless from them. The defendant shall not incur any further expenses for which the plaintiff may become liable and he shall return to the plaintiff forthwith any credit cards in joint names in his possession.
The plaintiff is ordered to transfer to an IRA in the defendant's name the sum of fifteen thousand ($15,000) dollars from retirement assets presently held in her name. To effectuate this provision, the defendant shall notify the plaintiff, in writing, of the name of the financial institution and account number within thirty days of this decision and the plaintiff shall cause the transfer within thirty days thereafter. In the event this transfer must be done through the vehicle of a Qualified Domestic Relations Order, then such an order is issued. It shall be prepared and submitted to the plaintiff's employer for approval by counsel for the plaintiff.
The plaintiff shall be entitled to sole ownership of the Grande Road property and shall hold the defendant harmless from the mortgages, taxes, and any other encumbrances on this property.
With the exception of the provisions made in this decision, CT Page 13953 each party shall be entitled to ownership of the assets each presently possesses, and each shall be responsible for the liabilities each has incurred.
No award of counsel fees is made to either party.
In making these determinations, the court has carefully considered the probative evidence and applicable decisional and statutory law.
Counsel for the plaintiff shall prepare the judgment file.
Bishop, J.